NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
LEONID KHRAKOVSKIY,                       :
:
Plaintiff,              :
:                     Civil Action No. 06-1033 (JAG)
v.                    :
:                          **OPINION**
HELEN DENISE; MAYBE MOM, INC.;            :
and WALGREEN, CO.,                        :
:
Defendants             :
_____:

**ARLEO, JR., U.S.M.J.**

This matter comes before the Court on the motion by plaintiff Leonid Khrakovskiy

("plaintiff") for summary judgment[1] on the counterclaims of defendants Maybe Mom, Inc.

("Maybe Mom") and Helen Denise ("Denise") (sometimes collectively "defendants"), pursuant

to FED. R. CIV. P. 56.[2]  (Docket Entry No. 35).  Plaintiff asserts that he is entitled to summary

judgment on defendants' counterclaims for usury (Counterclaim I);  tortious interference with

contract and with prospective economic advantage (Counterclaim II);  breach of contract

(Counterclaim III); breach of the covenant of good faith and fair dealing (Counterclaim IV); and

fraudulent inducement (Counterclaim V).  The motion for summary judgment is decided without

oral argument pursuant to FED. R. CIV. P. 78.  For the reasons set forth below, this motion shall

---

[1] The parties previously consented to the undersigned's jurisdiction.

[2] Based on the Court's review of plaintiff's motion papers, it does not appear that he is
moving for summary judgment on any of his affirmative claims.  Accordingly, this Court will not
address herein whether summary judgment is appropriate as to any of them.

be **GRANTED**.

## I. BACKGROUND

This action involves various counterclaims arising out of three loans memorialized by three promissory notes, respectively, that plaintiff made to Maybe Mom, a corporation. Maybe Mom sold home pregnancy kits for sale in defendant retail store, Walgreen Company ("Walgreens"). *See generally Compl.*

The record before the Court establishes the following undisputed facts.[3] Denise is the sole owner and President of Maybe Mom. In November 2005, plaintiff verbally agreed to lend Maybe Mom $100,000 for six months because Maybe Mom required funds for working capital.

_____

[3] It is undisputed that the three promissory notes were negotiated and executed. However, in their opposition, defendants dispute several terms of the promissory notes, governing the parties' respective obligations thereunder. In opposition, defendants do not provide a responsive statement of material facts as required by LOCAL CIVIL RULE 56.1.

Rule 56.1 provides that  the opponent shall submit, "with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, . . . stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. CIV. R. 56.1. *See Van v. Borough of North Haledon*, 2009 WL 1811727, * 1 n. 2 (D.N.J. Jun. 22, 2009); *Kramer v. Exxon Mobil Corp.*, 2009 WL 1544690, * 3 (D.N.J. Jun. 3, 2009).

When the nonmoving party fails to submit such a statement, "'it is entirely appropriate for this court to treat all facts properly supported by the movant to be uncontroverted.'" *Talbot v. United States*, 2005 WL 2917463, at *2 (D.N.J. Oct. 28, 2005) (internal quotation omitted). *See* L. CIV. R. 56.1 ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *See, e.g., Ghaffari v. Hern*, 2009 WL 2147092, * 1 n.1 (D.N.J. Jul. 15, 2009); *Haddonbrook Associates v. General Elec. Co.*, 2009 WL 704380, * 2 n. 2 (D.N.J. Mar. 13, 2009). Accordingly, this Court deems the facts as stated in plaintiff's Rule 56.1 Statement of Undisputed Material Facts as undisputed. Nonetheless, under Rule 56(e)(2), an unopposed motion for summary judgment may be granted only if deemed appropriate, and thus, this Court will consider the merits of plaintiff's arguments supporting entry of summary judgment. *See Anchorage Assocs. v. Virgin Islands Bd. Of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990); *see also Morrison v. Phillips*, 2008 WL 4308215, * 5 (D.N.J. Sept. 16, 2008).

*Declaration of Eric Wertheim in Support of Summary Judgment ("Wertheim Decl."),* Exh. C at 24:10-23; *Plaintiff's Declaration in Support of Summary Judgment ("Pl. Decl."),* ¶2). On November 4, 2005, a promissory note for $100,000 at an annual interest rate of 24% was executed ("First Loan"). *Pl. Decl.,* ¶¶ 3-4, Exh. A; *Wertheim Decl.*, Exh. C at 25:2-16, 28:17-22, 29:8-16; *Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Pl. Rule 56.1 St."),* at ¶ 1. The First Loan had a maturity date of May 4, 2006. Six consecutive interest payments of $2,000 were due on the fourth day of every month (*i.e.*, reflecting an annual interest rate of 24%). *Pl. Decl.,* ¶ 4, Exh. A; *Pl. Rule 56.1 St.,* ¶ 1; *Wertheim Decl.,* Exh. C, 48:18-25. A lump sum payment of the entire principal was due on May 4, 2006. *Pl. Decl.,* ¶ 4, Exh. A; *Pl. Rule 56.1 St.,* ¶ 1.

Under the terms of the First Loan, a twenty-day grace period was extended to Maybe Mom, including interest and principal. *Pl. Decl.,* ¶ 4, Exh. A; *Pl. Rule 56.1 St.,* ¶ 1. In the event of default, the First Loan included an acceleration clause, whereby plaintiff could demand immediate repayment of the outstanding principle and interest, including all costs and reasonable attorney fees. *Pl. Decl.,* ¶¶ 3-4, Exh. A. Denise personally guaranteed the First Loan. *Pl. Decl.,* ¶ 3, Exh. A*; Wertheim Decl.,* Exh. C, 25:24-25 - 26:1; *Pl. Rule 56.1 St.,* ¶ 1.

To secure the First Loan, defendants provided plaintiff with a security interest in certain accounts receivable from Walgreen, evidenced by invoices to Walgreens. *Pl. Decl.,* ¶ 5, Exh. B; *Wertheim Decl.,* Exh. C, 25:10-18; *Pl. Rule 56.1 St.,* ¶ 2. Denise, on behalf of Maybe Mom, sent a letter dated November 4, 2005, indicating that the parties entered into a factoring arrangement, whereby Maybe Mom assigned its right to receive payment for specified Walgreens invoices totaling $161,117.21, to plaintiff in the event of a default on the First Loan ("November 4, 2005

3

Letter"). *Pl. Decl.*, ¶¶ 5-6, Exh. B; *Wertheim Decl.,* Exh. C, 31:8-25; 33:10-25 - 34:1-4; *Pl. Rule 56.1 St.*, ¶ 2.  The November 4, 2005 Letter further indicated that plaintiff could exercise his right to receive payment for Walgreens' invoices only if defendants were in default of payments after the expiration of a 15-day grace period.[4]  *Pl. Decl.*, Exh. B.

In December 2005, Maybe Mom sought an additional $10,000 loan.  *Pl. Decl.*, ¶ 7, Exh. C; *Wertheim Decl.,* Exh. C, 43:12-17; *Pl. Rule 56.1 St.*, ¶ 3.  The short-term $10,000 loan was documented with a promissory note, dated December 2, 2005;  repayment was due one week later on December 7, 2005 ("the Second Loan").   *Pl. Decl.*, ¶¶ 7-8, Exh. C;  *Wertheim Decl.,* Exh. C, 44:12-24, 46:3-9, 49:1-3; *Pl. Rule 56.1 St.*, ¶ 3.  The loan document is silent as to any interest rate.  *Pl. Decl.*, Exh. C.  Indeed, plaintiff acknowledges that the Second Loan was made without interest.  *Id.* at ¶ 7.  As with the First loan, Denise personally guaranteed the Second Loan.  *Pl. Decl.*, ¶ 8, Exh. C; *Pl. Rule 56.1 St.*, ¶ 3.

On December 7, 2005, plaintiff demanded payment of the accrued interest due on the First Loan and repayment of the Second Loan.  *Pl. Decl.*, ¶ 8.  According to plaintiff, on December 9, 2005, Denise gave plaintiff a $2,000 check drawn on Maybe Mom's business account as partial payment for the Second Loan.  *Pl. Decl.*, ¶ 9, Exh. D;  *Wertheim Decl.,* Exh. C, 49:12-25 - 50:1-2, 20-24.  Plaintiff further claims that, at the time Denise gave him the $2,000 check, she promised to pay the balance due on the Second Loan before January 4, 2006.  *Pl. Decl.*, ¶ 9; *Pl. Rule 56.1 St.*, ¶ 4.

---

[4] The Court notes that the fifteen-day grace period set forth in the November 4, 2005 Letter contradicts the twenty-day grace period contained in the November 4, 2005 promissory note.  *See Pl. Decl.*, Exhs. A & B.  However, given the Court's analysis herein, this discrepancy is of no moment.

In late December 2005, Denise told plaintiff that Maybe Mom needed another short term loan. *Pl. Decl.*, ¶ 10; *Wertheim Decl.,* Exh. C, 51:24-25 - 52:1-5, 18-22.  On December 27, 2005, a promissory note was executed for a $5,000 loan, with repayment due on January 31, 2006 ("the Third Loan").  *Id. at* ¶11, Exh. F;  *Wertheim Decl.,* Exh. C, 64:1-14; 65:3-7; *Pl. Rule 56.1 St.*, ¶ 5.  A fifteen-day grace period was designated for repayment.  *Id.*  The loan document is silent as to any interest rate.  *Pl. Decl.*, Exh. F.  Denise personally guaranteed the Third Loan. *Id.*, Exh. E.

To secure the Third Loan, defendants provided plaintiff with a security interest in additional accounts receivable from Walgreens, evidenced by invoices to Walgreens.  *Pl. Decl.*, ¶ 12, Exh. G.  Denise, on behalf of Maybe Mom, sent a letter dated January 3, 2006, indicating that the parties entered into a factoring arrangement, whereby Maybe Mom assigned its right to receive payment for specified invoices totaling $24,646.25 to plaintiff in the event of a default on the Third Loan ("January 3, 2006 Letter").  *Pl. Decl.*, ¶ 12, Exh. G;  *Wertheim Decl.,* Exh. C, 76:16-17, 24; *Pl. Rule 56.1 St.*, ¶ 6.  The January 3, 2006 Letter further indicated that plaintiff could exercise his right to receive payment for Walgreens invoices only if defendants were in default after the expiration of a 15-day grace period.  *Pl. Decl.*, Exh. G.

According to plaintiff, following the execution of the promissory note on the Third loan, plaintiff did not receive any further payments due on any of the three loans.  *Pl. Decl.*, ¶ 13.  On January 10, 2006, plaintiff declared defendants to be in default and demanded repayment of the entire combined balance due with incurred interest.  *Id.*; *Pl. Rule 56.1 St.*, ¶ 7.  After receiving no payment or assurance thereof, plaintiff sent the November 4, 2005 and January 3, 2006 letters from Denise to Walgreens, outlining the terms of defendants' assignment of the invoices.  *Id.* at

¶ 14, Exhs. B & G.  In a letter dated February 24, 2006, counsel for Walgreens wrote to plaintiff's prior counsel indicating that Walgreens would not release the money owed pursuant to the invoices until this litigation was resolved.  *Id.* at ¶ 14; *Pl. Rule 56.1 St.*, ¶ 8.

In sum, over the course of less than three months, plaintiff lent defendants $115,000, excluding interest.  Defendants have repaid only $2,000.

On March 6, 2006, plaintiff filed a Complaint asserting claims for breach of contract, unjust enrichment, and fraud against defendants.[5]  *Id.*  Defendants answered the Complaint and asserted several counterclaims.  *Def. Ans. & Counterclaims One-Five.*  In support of their first counterclaim for usury, defendants allege that their debts arise from usurious loans.  Thus, the loans should be declared null and void, and the monies repaid should be disgorged.  *Def. Counterclaims,* ¶¶ 3-4.

The following allegations support defendants' second, third, and fourth counterclaims for tortious interference with contract and with prospective economic advantage, breach of contract, and breach of the implied covenant of good faith and fair dealing, respectively.  Defendants contend that, in his attempt to collect on defendants' allegedly outstanding debt, plaintiff altered the face of the written factoring agreements and misrepresented the terms of same to Walgreen.  Specifically, according to defendants, under the terms of the two factoring agreements, plaintiff was entitled to exercise his right thereunder after notifying defendants of an alleged default and only after defendants had been in default following the specified grace period.  Plaintiff, however, allegedly redacted this provision and failed to provide defendants with such requisite

---

[5] Although plaintiff named Walgreens as a defendant, he asserts no affirmative claims against Walgreens.

6

notice before presenting the factoring agreements to Walgreens for collection of the debt.  *Id.* at ¶¶ 7-9.  As a result, Walgreen refused to pay any monies owed to Maybe Mom.  *Id.* at ¶¶ 6-7, 11.

Furthermore, plaintiff's alleged fraudulent alteration of the factoring agreements and misrepresentation of their terms to Walgreens amounted to a breach of the factoring agreements and breach of the implied covenant of good faith and fair dealing within those agreements.  *Id.* at ¶¶ 14, 17.  Defendants claim to have sustained damages as a result of plaintiff's fraudulent and unlawful conduct.  *Id.* at ¶¶ 12, 15, 18.

In support of their fifth counterclaim for fraudulent inducement, defendants assert that plaintiff misrepresented to defendants that he would not present the factoring agreements to Walgreen without prior notice of default to defendants following the grace period.  *Id.* at ¶¶ 20-21.  According to defendants, plaintiff made such misrepresentations with the intent that defendants would rely on these misrepresentations to execute the factoring agreements.  As a result, defendants sustained damages.  *Id.* at 21-23.

Discovery closed in July 2008, and thus, this matter is ripe to address the merits of plaintiff's motion for summary judgment.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cascara v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v.*

7

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  As the Supreme Court has emphasized:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex,* 477 U.S. at 322.  *Accord* FED. R. CIV. P. 56(e).

If the moving party can demonstrate such an absence of evidence, the party opposing the motion must establish that a genuine issue as to a material fact exists and that a trial is necessary. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  Federal Rule of Civil Procedure 56 does not require a court to "scour the entire record to find a factual dispute."  *Dawley v. Erie Indem. Co.*, 100 F. App'x 877, 881 (3d Cir. 2004).  In meeting its burden, the non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported

allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). On the other hand, "[i]f the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006).

## III.  ANALYSIS

### A.    Counterclaim I: Usury

In moving for summary judgment on defendants' usury counterclaim, plaintiff argues that, under both New Jersey law and New York law, Maybe Mom as the corporate borrower of the three loans is prohibited from asserting such a counterclaim.[6]  Although plaintiff submits that New Jersey law applies, he alternatively argues that, under New York law, the 24% annual interest rate on the First Loan is not in excess of 25%, the threshold rate for criminal usury.  See *General Obligations Law* § 5-521[1, 3].  Accordingly, plaintiff contends that under either state's substantive law governing usury, defendants cannot offer any evidence that a defense or

---

[6] In support of his motion, plaintiff asserts that New Jersey law, rather than New York law, governs defendants' usury counterclaim because defendants are located in New Jersey and the money was advanced in New Jersey although payment was due in New York.  Defendants do not address, let alone dispute, plaintiff's position.

counterclaim for usury can be asserted.

In opposition, defendants contend that a genuine issue of material fact exists as to whether the three loans were usurious. *Def. Opp. Bf.* at *3, 5-6.* As to plaintiff's corporate borrower argument, defendants argue that the promissory notes were silent as to whether the lender or borrower were corporations. *Id.* at 6. As such, presumably defendants conclude that the loans were usurious because they were made, in fact, to Denise personally, not to Maybe Mom. Thus, according to defendants, there is a genuine issue of material fact as to whether defendants are prohibited from raising the defense or counterclaim of usury.

Under New Jersey law, corporations, as borrowers, are prohibited from asserting usury as a defense or counterclaim. *N.J.S.A.* 31:1-6 ("No corporation, limited liability company or limited liability partnership shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation, limited liability company or limited liability partnership."). *See Jersey Marine Indus., Inc. v. Canyon Classics Offshore Yachts, Inc.*, 2005 WL 3406414, * 4 (D.N.J. Dec. 14, 2005). Additionally, under *N.J.S.A.* 31:1-6, an individual who personally guarantees the corporate obligation is also prohibited from asserting usury as a defense or counterclaim. *See Selengut v. Ferrara*, 203 N.J. Super. 249, 258 (N.J. App. Div.), *cert. denied,* 102 N.J. 316 (N.J. 1985) (citing *Gelber v. Kugel's Tavern, Inc.*, 10 N.J. 191, 196 (1952)).

Similarly, under New York law, a corporation may not raise a defense or counterclaim of civil usury. *General Obligations Law* § 5-521[1]. *See Tower Funding, Ltd. v. David Berry Realty, Inc.*, 755 N.Y.S.2d 413, 415 (N.Y. App. Div. 2003). Furthermore, "[a]n individual

guarantor of a corporate obligation is also precluded from asserting such a defense."[7] *Tower Funding*, 755 N.Y.S.2d at 415 (internal citation omitted).

Here, the three loans were made to Maybe Mom as a corporate debt, not to Denise personally.  Indeed, at noted above, in her deposition, Denise testified that the three loans were made to Maybe Mom for business purposes, and that Denise only personally guaranteed the loans.  As such, although defendants presently contend that Denise was the borrower to create an issue of material fact as to the usurious nature of the three loans, the Court acknowledges that these statements substantially contradict Denise's prior deposition testimony.  It has been held that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004).  Thus, the Court rejects defendants' contention that any of the three loans are usurious on grounds that they were made to Denise personally.

In response to plaintiff's criminal usury argument, defendants assert that one of the three promissory notes contained a 24% interest rate while the other two notes did not contain any interest rate.  Defendants presumably argue that the Second and Third Loans, which are silent on interest rate, could exceed 25%.

As noted above, under New York law, a corporation may only raise the defense of usury

---

[7] The parties do not address whether a conflict of law exists between New Jersey and New York law concerning defendants' alleged prohibition against asserting usury as a defense or counterclaim.  This failure is of no moment because the Court independently finds that under both states' substantive laws, defendants cannot assert usury as a defense or counterclaim.  Thus, this Court concludes that no actual conflict exists, and the usury counterclaim fails under either state's law.

if the interest rate exceeds 25%, the threshold rate for criminal usury. *General Obligations Law* § 5-521[3]. *See Aaron v. Mattikow*, 146 F. Supp.2d 263, 265 (E.D.N.Y. 2001). Here, as previously stated, it is undisputed that only the First Loan for $100,000 was made at a 24% annual interest rate, which on its face is not usurious. Indeed, the 24% interest rate was not in excess of the legal annual rate of 25% for a corporation. The Second Loan and the Third Loan were short-term loans, which were silent as to any rate of interest. However, there is no evidence that plaintiff has ever sought to recover a 25% rate on the second or third loans. The loan documents on their face do not have a 25% or greater interest rate. Thus, the Court rejects defendants' contention that any of the three loans are usurious based on the amount of interest.

In sum, as to plaintiff's motion for summary judgment on the usury counterclaim, plaintiff has met his burden. In response, defendants have failed to offer actual evidence that shows the existence of a genuine issue as to any material fact. Thus, plaintiff's motion for summary judgment on Counterclaim I will be granted.

## B.   <u>Counterclaim II: Tortious Interference</u>

Next, the Court considers whether summary judgment is appropriate as to defendants' counterclaim for tortious interference with contract and prospective economic advantage. Defendants presumably are charging that plaintiff tortiously interfered with defendants' prospective economic advantage from their contractual business relations with Walgreens. *See Def. Counterclaim II*.

To prove a counterclaim for tortious interference with a prospective economic advantage under New Jersey law, defendants must establish: (1) that they had a reasonable expectation of economic advantage arising from their contractual relations with Walgreens; (2) that plaintiff's

12

interference was done intentionally and with malice; (3) that a conclusion can be drawn that plaintiff's interference caused defendants to lose a prospective economic gain with Walgreens; and (4) that the loss of the prospective gain caused defendants to suffer damages. *See Baldasarre v. Butler*, 132 N.J. 278, 293 (N.J. 1993).   Thus, defendants here would have to show that in the absence of plaintiff's interference, defendants had a reasonable expectation of receiving monies allegedly owed by Walgreens for Maybe Mom products sold in its stores.

In moving for summary judgment, plaintiff argues that, even assuming he prematurely declared defendants to be in default on the three loans, defendants have offered no proof of damages.  As such, plaintiff contends that defendants cannot maintain their tortious interference counterclaims because damages is an essential element of both causes of action.[8]

In their opposition brief, beyond their factual assertions that plaintiff's premature declaration of default caused Walgreens to freeze monies owed to defendants, they assert no legal arguments in support of their tortious interference counterclaims.  Moreover, defendants have offered no competent evidence to establish the existence of any essential elements to support their tortious interference counterclaims.

Focusing on the second and third elements, the Court independently finds that defendants' tortious interference claims fail because they have not offered a scintilla of evidence to prove that plaintiff intentionally and maliciously interfered with defendants' entitlement to monies owed by Walgreens and that such interference caused the monies to be withheld.  For

--------

[8] In moving for summary judgment on defendants' breach of contract, breach of implied covenant of good faith and fair dealing, and fraudulent inducement, plaintiff again relies on its contention that defendants' absence of damages evidence amounts to a failure to demonstrate a genuine issue of material fact.  As such, the Court will not reiterate plaintiff's argument hereafter in connection with whether summary judgment is appropriate on these additional counterclaims.

instance, as to the second element, interference with a prospective economic advantage or a contract is intentional "'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Foxtons, Inc. v. Cirri Germain Realty*, 2008 WL 465653, * 7 (N.J. App. 2008) (quoting *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (N.J. App. Div. 2003) (internal citation omitted).

Yet, a party who acts to advance his own interest and/or financial position does not satisfy the necessary malice or intentional conduct.  *See id.*  In this situation, "malice" is defined to mean that "'the harm was inflicted intentionally and without justification or excuse.'"  *Baldasarre*, 132 N.J. at 293 (quoting *Printing Mart v. Sharp Elec.*, 116 N.J. 739, 751 (1989)).  Here, defendants do not demonstrate that plaintiff acted intentionally or maliciously when he prematurely declared defendants in default.  Plaintiff's mere presentment of the factoring agreements to Walgreens in early January 2006 does not alone establish malice and intent to tortiously interfere with defendants' business relationship with Walgreens.  Indeed, this Court finds that defendants have failed to prove that plaintiff was motivated by more than his reasonable desire to protect his legitimate financial interests in seeking repayment for defendants' outstanding debts on the three loans.  Defendants offer no evidence that plaintiff had an intention to gain an economic advantage by undermining defendants' contractual business relations with Walgreens.  *See id.*

As to the third element of causation, plaintiff argues that his presentment of the factoring agreements to Walgreens had no effect on defendants' contractual relationship with Walgreens. In support of his argument, plaintiff has offered the deposition testimony of Andrea Collaro ("Collaro"), a Walgreens representative, demonstrating that Walgreens continued to attempt to sell the Maybe Mom product after Walgreens withheld payments as a result of the instant suit.

14

*Wertheim Decl.,* Exh. D at 58:12-19. Collaro further testified that she believed that Walgreens last ordered a Maybe Mom product at the end of 2006 - almost one year after plaintiff's alleged tortious conduct. *Id.* at 59:5-8. Defendants have offered no evidence to contradict this testimony. Accordingly, on the record before the Court, no conclusion can be drawn that plaintiff's alleged interference caused defendants to lose prospective business with Walgreens.

Finally, as to the element of damages, defendants' showing of proof falls woefully short of creating a genuine issue of material fact or demonstrating that a trial is necessary. Again relying on the deposition testimony of Collaro, plaintiff submits evidence that in approximately 2006 Walgreens decided to stop carrying the Maybe Mom product in its retail stores due to low customer sales of the product, as had been the case throughout Walgreens' business relationship with Maybe Mom. *Wertheim Decl.*, Exh. D at 59:59:15-24 - 60:1-6.

In opposition, defendants submit the declaration of Denise ("Denise's declaration") merely alleging that plaintiff's premature declaration of default caused defendants to sustain the following damages[9]: Maybe Mom's failure to receive needed cash flow from Walgreens, Maybe Mom's largest customer; the collapse of Maybe Mom's business; loss of Maybe Mom's credit and good will; eviction from Maybe Mom's corporate offices in Lodi, New Jersey; loss of Maybe Mom's insurance liability policy; a judgment against Maybe Mom on its credit line from a bank; and ultimately the foreclosure on Denise's home. *Declaration of Helen Denise ("Denise Decl.")*

---

[9] In support of their counterclaims for breach of contract, implied covenant of good faith and fair dealing, and fraudulent inducement, defendants present only Denise's declaration as evidence of damages. As discussed below, damages is an essential element to prove these remaining counterclaims under both New Jersey and New York law. Thus, the Court's analysis on defendants' damages evidence to support their tortious interference counterclaims applies equally to the remaining counterclaims.

at ¶¶ 11, 19.[10]  Beyond Denise's own statements, defendants have not offered any evidence outlining these damages with any specificity.

Furthermore, Denise's declaration contains unsubstantiated conclusory statements that plaintiff's premature exercise of his security interest in the accounts receivables caused defendants' damages.  For instance, Denise does not articulate with any detail, when, why or how Walgreens' failure to pay Maybe Mom for monies owed caused defendants to sustain any damages.  Her declaration is devoid of any facts which would support a causal link between plaintiff's alleged tortious interference and the amount of damages.  Denise further fails to articulate how Maybe Mom's credit or good will were effected by Walgreen's failure to pay defendants.  Indeed, as set forth above, Collaro testified that Walgreens continued to carry the Maybe Mom product in its stores after plaintiff presented the factoring agreements to Walgreens. Collaro further testified that Walgreens' decision to stop carrying the product was caused by poor sales not plaintiff's conduct.  Defendants have presented no contradictory evidence.

"[I]n a summary judgment motion the Court does not have to credit bald statements unsubstantiated by at least circumstantial evidence." *King v. Cape May Cnty. Board of Freeholders*, 2007 WL 2300785, * 3 (D.N.J. Aug. 8, 2007).  The Supreme Court has unequivocally stated that the object of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).  Indeed, as is the case here, a party cannot make general allegations of injury in a pleading, and then oppose a summary judgment motion with an affidavit containing

---

[10] During Denise's deposition, she testified that defendants sustained similar damages. *Wertheim Decl.*, Exh. C. at 84:1-23.

16

general allegations of injury. *Id.* at 889.

Here, a reasonable jury could not conclude from Denise's unsupported statements that plaintiff's allegedly tortious conduct or Walgreens' failure to pay defendants monies owed resulted in damage to defendants. In addition, defendants have failed to point to sufficient evidence which would allow a jury to find in their favor at trial. Proof of damages is an essential element of both tortious interference counterclaims. *See, e.g., Bridgestone/Firestone North American Tire, LLC. v. LePore*, 2007 WL 4440960, * 9 (D.N.J. Dec. 17, 2007) (finding that defendants failed to prove that plaintiff's actions were wrongful or that defendants were injured as a result of plaintiff's conduct, and thus, summary judgment was appropriate on defendants' counterclaim for tortious interference with contract and/or prospective business relationships); *Norwood Easthill Associates v. Norwood Easthill Watch*, 222 N.J. Super. 378, 384 (N.J. App. Div. 1988) (finding that summary judgment proper on plaintiff's tortious interference with contract claim because she failed to prove necessary element of damages).

In short, plaintiff has met his burden at summary judgment. In response, defendants have failed to raise a genuine issue of material fact to support this counterclaim, and thus summary judgment is granted as to Counterclaim II.[11]

### C.   Counterclaim III: Breach of Contract

---

[11] Under New York law, defendants' tortious interference counterclaim would still fail because defendants do not offer competent evidence to prove that plaintiff acted solely to harm defendants by unlawful means beyond mere self-interest or for other economic reasons or present admissible evidence as proof of damages. *See Phillips v. Carter*, 872 N.Y.S. 2d 22, 23 (N.Y. App. Div. 2009);   *Nordic Bank PLC v. Trend Group Ltd.*, 619 F. Supp. 542, 560-61 (S.D.N.Y. 1985);   *Mattesich v. Hayground Cove Asset Mgmt.*, 876 N.Y.S.2d 405, 406 (N.Y. App. 2009) Accordingly, summary judgment would still be appropriate.

To prevail on their breach of contract counterclaim, defendants must prove that (1) a contract existed between the parties, (2) plaintiff breached a duty imposed by the contract, (3) defendants performed their obligations under the contract and (4) defendants were damaged as a result of plaintiff's breach. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp .2d 543, 566 (D.N.J.2003) (applying New Jersey law).

As to the first element, it is undisputed that plaintiff had a security interest in defendants' accounts receivables from Walgreens, and that the security interest was memorialized by two factoring agreements, dated November 4, 2005 and January 3, 2006, respectively.  However, even if defendants were able to establish plaintiff breached his duty under the factoring agreements by prematurely declaring defendants in default as proof of the second element, as detailed below, the Court finds that defendants' breach of contract claim still fails as a matter of law.

As to the third element, defendants offer no proof that they performed their obligations under the factoring agreements.  Specifically, defendants present no evidence that they repaid their loans before plaintiff declared them to be in default.  Additionally, defendants offer no proof that had plaintiff properly waited until after the grace period before declaring defendants in default that defendants had the financial means to repay the loans and would have repaid them. As such, defendants has not created a genuine issue of material fact or shown that they can meet their burden of proof at trial.

Additionally, as to the element of damages, this Court previously addressed defendants' failure to present any evidence of damages beyond the bald conclusory statements contained in Denise's declaration.  Proof of damages is an essential element of a breach of contract claim.

*Gazarov v. The Diocese of Erie*, 80 F. App'x. 202, 206 (3d Cir. 2003). Accordingly, for the same reasons the Court previously found that defendants failed to prove damages to sustain their tortious interference counterclaim, the Court finds that defendants do not offer any competent evidence to prove damages to support their breach of contract counterclaim. *See*, *e.g.*, *Corestar Int'l PTE. LTD v. LPB Communications, Inc.*, 2007 WL 2990896, * 4 (D.N.J. Oct. 10, 2007) (finding that because plaintiff had only submitted unsupported statement as evidence of its damages as result of alleged breach, and defendant has objected to it, plaintiff has not met its burden of proving damages on breach of contract claim).

In short, plaintiff has satisfied his burden at summary judgment. In response, defendants have failed to raise a genuine issue of material fact that defendants performed their obligations under the factoring agreements or have been damaged by plaintiff's alleged breach. As such, defendants cannot sustain their breach of contract counterclaim. Thus summary judgment is granted as to Counterclaim III.[12]

### D.   Counterclaim IV: Breach of the Implied Covenant of Good Faith & Fair Dealing

Under New Jersey law, all contracts contain an implied covenant of good faith and fair dealing. *See Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002) (citing *Wilson v. Amerada Hess Corp.*, 168 *N.J.* 236, 244 (2001)). "As the [New Jersey] Supreme Court noted in *Wade,* the cause of action for breach of the implied covenant of good faith and fair dealing arises when a defendant has complied with all of the literal terms of the contract but has done so in a way

---

[12] Damages is an essential element to prove breach of contract under New York law. *Mattesich*, 876 N.Y.S.2d at 406. Accordingly, defendants would be unable to prove such a counterclaim or offer evidence showing a genuine issue of material fact exists under New York law. Thus, summary judgment would still be appropriate.

which nonetheless deprives the injured party of the fruits of the contract." *Kurnik v. Cooper Health Sys.*, 2008 WL 2829963, * 24 (N.J. App. Jul. 24, 2008).  As such, the injured party must show damages to sustain such a claim.  *See Kurnik*, 2008 WL 2829963, at 24.  Additionally, to establish a maintainable cause of action based on the implied covenant of good faith and fair dealing, a party must prove bad faith and ill motive.  *Woods v. Township of Irvington*, 2009 WL 2475323, * 8 (N.J. App. Div. Aug. 14, 2009) (internal citation omitted).

Here, as previously discussed, defendants have not offered any competent evidence to demonstrate how plaintiff's alleged breach of the factoring agreements injured defendants.  As noted above, plaintiff offered evidence that he presented the factoring agreements to Walgreens based on his belief that defendants were in default, and thus, he was entitled to exercise his security interests in the monies that Walgreens owed to defendants.  Defendants further have not proffered any evidence that plaintiff acted in bad faith or with an ill motive.  In sum, plaintiff has met his burden.  In response, defendants have failed to raise a genuine issue of material fact that they have been damaged in order to sustain this counterclaim.  Thus, summary judgment is granted as to Counterclaim IV.[13]

### E.   Counterclaim V: Fraudulent Inducement

To establish a counterclaim of fraudulent inducement in New Jersey,  a counterclaimant

---

[13] Under New York law, a "[b]reach of the covenant of good faith and fair dealing occurs [ ] where the contract is not technically breached, but one party has acted to destroy or injure the right of the other party to receive the benefit of the contract."  *Witherspoon v. Rappaport*, 65 F. App'x 356, 359 (2d Cir. 2003).  Based on the record, the Court is satisfied that defendants have not offered any evidence that plaintiff acted to destroy or injure defendants' right to receive the economic benefit of their contractual relationship with Walgreens.  Thus, summary judgment would still be appropriate under New York law because defendants have failed to present any evidence to sustain its breach of covenant claim.

must prove: "(1) a material misrepresentation of a presently existing or past fact, (2) with knowledge of its falsity and with the intention that the other person rely on it, and that there was in fact both (3) reasonable reliance and (4) resulting damages." *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, 2009 WL 1652156, * 8 (D.N.J. Jun. 10, 2009) (citing *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, (N.J.2005)).

As to the second element, even if the Court were to find that plaintiff's failure to honor the grace period before exercising his right to declare default was a material misrepresentation under the factoring agreements, the Court finds that defendants' fraudulent inducement claim still fails as a matter of law. Specifically, as to the third element, defendants offer no proof that had plaintiff waited to declare default that defendants had the financial means available and would have repaid their outstanding debt to plaintiff after the grace period expired. In other words, defendants have offered no evidence that they reasonably relied on plaintiff's alleged material misrepresentation to honor the grace period, which defendants describe as fraudulent, as a condition to defendants' execution of the factoring agreements.

As to the element of damages, for the reasons discussed previously herein, the Court finds that defendants have failed to prove damages. In short, plaintiff has satisfied his burden at summary judgment. In response, defendants have failed to offer evidence to establish a genuine issue as to a material fact on reasonable reliance and damages. Accordingly, summary judgment is appropriate as to Counterclaim V.[14]

---

[14] Under New York law, a party must prove all of the following elements in order to establish a claim of fraudulent inducement: (1) misrepresentation of a material fact; (2) the falsity of the misrepresentation; (3) scienter; (4) reliance by the injured party; and (5) damages. *Knoll v. Equinox Fitness Clubs*, 2003 WL 23018807, * 6 (S.D.N.Y. Dec. 22, 2003). Again, for the reasons stated above, defendants have offered no competent evidence to prove the essential

## IV.  CONCLUSION

For the reasons stated above, this Court determines that plaintiff has demonstrated that, as to defendants' Counterclaims I through V, "there is no genuine issue as to any material fact and that [he is] entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Plaintiff's motion for summary judgment is **GRANTED**.  An accompanying appropriate order will be filed in connection herewith.

A telephone status conference is scheduled for **Friday, November 6, 2009 at 12:00 noon** at which time the Court will set a trial date.  Plaintiff's counsel shall initiate the telephone conference.

*s/Madeline Cox Arleo*
MADELINE COX ARLEO, U.S.M.J.

Date:   October 14, 2009

---

elements of reliance and damages.  Accordingly, their fraudulent inducement counterclaim cannot survive summary judgment even if New York substantive law were to govern this dispute.